[Civ. No. 9892. First Appellate District, Division One.—March 24, 1936.]

THE PEOPLE, Appellant, v. ONE LINCOLN EIGHT, ENGINE No. 31382, et al., Respondents.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Appellant.

John H. Corning and D. J. O'Brien, Jr., for Respondents.

KNIGHT, J.—The State appeals from an adverse judgment entered in the present proceeding which the State insti-·tuted under the State Narcotic Act for the forfeiture of the automobile above described.

The act provides among other things that "any automobile or other vehicle used to convey, carry or transport any of the drugs mentioned in section 1 of this act . . . shall be forfeited to the state of California as in this section provided"; also that in a proceeding instituted for the forfeiture of a vehicle so used, the claimant of any right, title or interest therein may file an answer and prove his lien, mortgage or conditional sales contract to be *bona fide* and that such right, title or interest was created after reasonable investigation of the responsibility, character and reputation of the offender and without any knowledge that the vehicle was being or was to be used for the illegal transportation of

drugs, in which event he shall be entitled to the release of said automobile provided the amount due him is equal to or in excess of the value of the automobile. (Sec. 15, State Narcotic Act, as amended in 1933, Stats. 1933, p. 781.)

The automobile in question was seized by state officers on a street in San Francisco while it was being driven by Henry Uhrig, the conditional sales vendee thereof. He failed to appear in the proceeding, but the conditional sales vendors, Taggart & Dolan, filed an answer setting forth their interest in said vehicle and alleging among other things that they "made investigation as to the responsibility, character and reputation" of Uhrig, and that they had no knowledge that said automobile was being, or was to be used, for the illegal transportation of drugs.

The trial court found, first, that said automobile was not used in the unlawful transportation of narcotics; and secondly, that the claimants had complied with the statutory requirements above mentioned in making reasonable investigation of the responsibility, character and reputation of Uhrig. Judgment was entered accordingly, releasing the automobile to them. As ground for reversal the State contends that said findings are wholly contrary to the admitted facts of the case. In our opinion the State's contention must be sustained.

■ With respect to the issue of transportation, the evidence shows that riding with Uhrig at the time of the seizure of the car were two other persons, namely, James Quinn and a Chinaman named Quong. All three were ordered out of the car and searched. Uhrig and Quong offered no objection and nothing illegal was found in their possession, nor were any drugs found concealed in the car itself. Quinn, however, resisted and after considerable difficulty the officers found four bindles of morphine on his person. The theory upon which the claimants endeavor to uphold the trial court's finding on this issue is based on the proposition that Quinn was a mere passenger in the automobile, and that since the narcotics were found in his possession and not concealed in the car itself nor on Uhrig, the vendee and driver thereof, it cannot be held that the car was being used unlawfully for the transportation of drugs in violation of the provisions of the section above quoted. Such theory is totally destroyed, however, by an overwhelming amount of additional uncontradicted evidence establishing beyond doubt that at the time of

the seizure of said car and for several months prior thereto Uhrig and Quinn had been actively engaged in the joint criminal enterprise of selling, transporting and delivering narcotics in violation of said act, and that when they were overtaken by state officers on the present occasion they were actually using the automobile in carrying on such joint criminal enterprise. All of these facts were established by the uncontradicted testimony of three state officers, neither Uhrig nor Quinn being called as a witness to refute said testimony.

In this regard the evidence shows that the living quarters occupied by them were operated as a so-called narcotic "joint" which was frequented by drug addicts and peddlers; that they took orders over the phone for delivery of drugs and afterwards made such deliveries by automobile; that they covered a regular route daily in San Francisco, selling and making deliveries to addicts and peddlers at certain hotels, rooming houses, garages and other places; that Uhrig drove the car while Quinn carried and delivered the drugs; and that on this particular day they had just left their living quarters together in said automobile and were starting out on one of their daily deliveries when overhauled by the state officers and their automobile seized. Furthermore the evidence shows without contradiction that immediately following the seizure the state officers searched the living quarters in the presence of Uhrig and there found secreted in various places large quantities of narcotics. It was concealed in a coffee can, a razor box, a box of "Wheaties", and a large quantity was found under the door step. The officers also unearthed various kinds of narcotic paraphernalia including "hypo" needles, and the paper which had been used to wrap the bindles of narcotics found in Quinn's possession; and Uhrig admitted having purchased the paper. The evidence further shows that while the officers were searching the premises several phone calls came from persons ordering drugs. One of the officers answered the phone, and pretending that he was Uhrig, received the orders and ascertained the names and addresses of those calling. He informed them that deliveries would be made at once. One of the persons so calling identified himself as "Tommie", and soon afterwards he phoned a second time, stating that "something must have happened to Quinn"—that he had not yet "showed up with the stuff", and requested Uhrig to bring it over at once, that

he was sick. It was also established that previously Uhrig had been convicted and imprisoned for unlawfully peddling narcotics.

At the conclusion of the foregoing evidence the court remarked: "The question arises whether the association of Uhrig and Quinn on that day [of the seizure] and on former occasions justifies the deduction that they were engaged in transporting these narcotics, that they were jointly engaged in that enterprise, and so forth. There is sufficient evidence to justify that deduction." But in its written decision filed subsequently, the court found specifically that on the day in question said automobile was not being used in the unlawful transportation of narcotics contrary to the force and effect of said State Narcotic Act. Manifestly, the undisputed facts above narrated prove to the contrary.

None of the federal cases cited and relied on by claimants in support of their theory are in point, nor is the law declared therein controlling here, for the reason that those cases involved the construction of federal revenue laws, the provisions of which are essentially different from the broad terms of the transportation clause of the State Narcotic Act.

■ With respect to the second issue, Miss Dolan, who consummated the sale with Uhrig, frankly admitted that no effort whatever was made to investigate Uhrig's character or reputation; that she was interested only in the question of his financial responsibility to pay for the car; and that she made but three such inquiries—one from Uhrig's bank prior to the consummation of the sale and delivery of the car, and two afterwards in checking references previously given her by Uhrig; that she was informed by one of said references that Uhrig was "a good old soak" and that the other told her he was "a very fine gentleman". Such was the extent and the result of her investigation. When the State's attorney proceeded to interrogate her as to what effort, if any, she made to investigate Uhrig's character or reputation the trial court said: "I wonder if that makes any difference, counsel. The lady says all she investigated was his financial standing, and she knew nothing about him, whether he was an ex-convict or a thousand things. She knew nothing about that and didn't inquire about it. Why not let it stand at that particular point, that she made no inquiry regarding his character at all, but only his financial standing." Under the ruling in

the recent case of *People* v. *One Harley Davidson Motorcycle,* 5 Cal. (2d) 188 [53 Pac. (2d) 970], such an investigation is legally insufficient to conform to the statutory requirements of section 15 of said act.

██  For the reasons stated the judgment is reversed; and exercising the power conferred by section 956a of the Code of Civil Procedure (a jury trial herein having been waived), this court finds from the undisputed facts disclosed by the record that at the time of the seizure of the automobile in question it was being used unlawfully for the transportation of narcotics in violation of the State Narcotic Act; also that prior to the creation of the rights of the claimants under the conditional sales contract pursuant to which the automobile was sold, no reasonable investigation was made by the claimants of the character and. reputation of the conditional sales vendee.  Therefore, the trial court is directed to enter its judgment accordingly, in favor of the State, for the forfeiture of said automobile.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 23, 1936, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 21, 1936.