[Civ. No. 2292. Fourth Appellate District.—May 9, 1940.]

THE PEOPLE, Respondent, v. ONE 1938 BUICK SEDAN, ENGINE No. 43502146, Defendant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Louis Ferrari, Edmund Nelson and John E. Walter for Appellant.

Earl Warren, Attorney-General, and J. Albert Hutchinson, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—This proceeding is one by the People of the State of California for the forfeiture of a 1938 Buick sedan, after the seizure of the automobile under the provisions of section 15 of the State Narcotic Act (Act 5323, Deering's Gen. Laws, 1937, p. 2600, Stats. 1929, p. 380, as amended). The purchaser of the Buick automobile was a negro by the name of William J. Speed, and the conditional vendor was

an automobile dealer by the name of Vincent E. Wood. Subsequent to the sale of the automobile Wood assigned the conditional sales contract to appellant. Issue was joined by the appellant on the ground that a reasonable investigation of the moral responsibility, character, and reputation of the purchaser had been made prior to the sale and the assignment, and on the further ground that the respondent's notice did not allege facts sufficient to constitute a cause of action. From an adverse judgment in the trial court appellant has perfected this appeal.

On March 19, 1938, Speed purchased from Wood the automobile involved herein. He was allowed $500 for a used car traded in, and signed a conditional sales contract for the balance of the purchase price. Wood had an agreement in writing with the appellant that he could discount such automobile contracts as the bank found acceptable and that he would receive immediate credit to his account for such contracts delivered to the bank, with the right in the bank to make an investigation of the desirability of such contracts and if the bank did not want to purchase any contract it could be rejected and the amount thereof charged back to Wood's account within fifteen days from the date of the credit allowed for that particular contract. It was stipulated by the respondent that the sale of the Buick automobile to Speed and the sale and assignment of the contract to the bank was *bona fide* in every respect and that neither Wood nor the bank had any knowledge that the automobile was or would be used to violate the Narcotic Act. On January 20, 1939, this Buick automobile was seized for a violation of the State Narcotic Act. In regard to this fact, Speed had placed the car in a private garage and after his arrest, two bindles of opium were found in the car. Speed later pleaded guilty to the charge of violating the State Narcotic Act and was imprisoned.

The position of the bank is that it claims it has an interest in the Buick under its conditional sales contract to the amount of $638.05, and that any equity or amount over this figure is correctly forfeited to the state. There can be no contention but that defendant automobile incurred a forfeiture and that the judgment is proper, unless appellant has established some affirmative defense to the forfeiture of its interest therein.

The main question on this appeal is whether appellant sustained the affirmative defense that its interest in the automobile was created after a reasonable investigation of the moral responsibility, reputation and character of the purchaser thereof. The discussion of this question may conveniently be divided into two parts, viz., the purported investigation made by the original owner of the automobile, and the purported investigation by the appellant prior to its purchase of the conditional sales contract.

■ It is provided in the State Narcotic Act that one claiming a lien upon or title to an automobile incurring a forfeiture may prove that his interest therein was created after a reasonable investigation of the purchaser's moral responsibility, character and reputation, as an affirmative defense to, or an exemption from the forfeiture. The burden of proving that such an investigation was made rests upon the claimant. (*People* v. *One Pontiac 8 Sedan,* 22 Cal. App. (2d) 503 [71 Pac. (2d) 302].) Undoubtedly the question of the extent and reasonableness of such an investigation is primarily a question of fact, although certain investigations have been held insufficient as a matter of law. (*People* v. *One Harley-Davidson Motorcycle,* 5 Cal. (2d) 188 [53 Pac. (2d) 970]; *People* v. *One Packard 6 Touring Sedan,* 26 Cal. App. (2d) 150 [79 Pac. (2d) 130].) ■ Appellant does not, in its brief, set out all of the evidence bearing on the question of whether a reasonable investigation was or was not made. In view of a finding that no reasonable investigation was made, it rests upon appellant to set out all the evidence on the issue to enable this court to determine whether the finding is, in fact, supported. This court should not be required to search through the evidence to discover whether the evidence supports the findings and judgment, and without a more extensive showing by appellant, this court ordinarily would be required to conclude that the evidence does support the findings. However, we will point out portions of the evidence which bear upon this subject. The first phase of the asserted investigation was that claimed to have been made by the conditional vendor, Wood.

■ A Mr. Schaeffer, sales manager for Wood, met Speed through a negro employee of Wood, two years prior to 1938, and tried on several occasions to sell him a car. Speed owned or was then working in a shoe repair shop. He (Schaeffer)

claimed that he had called at Speed's home on one occasion. When the Buick was sold to Speed, Wood obtained a purchaser's statement from him, which set forth his business and income. He gave a reference. Schaeffer talked to the reference and was unable to give any of. the conversation except that he learned nothing detrimental to Speed's reputation. He also talked to an employee of a credit company, which company held a contract on the Dodge touring sedan that Speed traded in on the Buick. He found that payments had been made promptly on the Dodge contract and that Speed was "O.K." as a financial risk. Schaeffer later, and after the contract was signed, telephoned a credit association and obtained a report from them about his credit rating. Briefly, the substance of the information obtained by the investigation made by appellant bank was that the branch' manager had checked over the purchaser's statement which had been turned over to him by Wood; obtained a report on credit rating from the Merchants' Credit Association of Santa Barbara; talked to a William Boykin, the reference above mentioned, and was advised by him that he had known Speed for the past fourteen years and that he did not know anything wrong about him. The branch manager was questioned as to whether or not the credit association reports would show any arrest or conviction for crimes. His answer was that he had obtained these reports for the past fourteen years and that "plenty" of the reports did show arrests and criminal convictions for crimes which came to the attention of the association through its members. Another witness testified that he had never seen criminal records reflected in such reports.

Respondent then showed by the evidence that Speed had, prior to the sale of the car in question, been convicted of the crime of grand larceny and served a term in the United States prison at Leavenworth upon such conviction; that he was a panderer and his wife was a prostitute; that he had had numerous arrests for vagrancy, the particular acts of vagrancy being that he was a panderer and a lewd and dissolute person; that he was reputed to have been engaged in the narcotic traffic prior to the time of his arrest and the seizure of the instant automobile.

The evidence of the arresting officer in this regard was to the effect that he was acquainted with this 1938 Buick sedan,

and the circumstances under which he became acquainted with it were, that he had made several efforts to apprehend Speed; that on January 19, 1939, he received information that Speed was leaving Santa Barbara for Bakersfield with $20 worth of opium to be delivered at 906 Eleventh Street in that city; that he checked on this information and found that the money had been sent; that he checked on a telephone call that had been put in, and with a government inspector went on the "spot or stake-out" about five minutes after midnight on the 20th of January; that Speed's car passed them on one of the streets in Bakersfield and that he parked his car in a garage, locked the doors and crossed the street to the address above mentioned, where he stayed for about twenty minutes; that he came back to the garage, opened the doors, and took out a suitcase from the rear of the car, went to the glove compartment of the car and took out a small package, relocked the car and went back into the house. At about 2:30 o'clock in the morning the officers raided the house and found Speed and two women, including Speed's wife, smoking opium. He arrested them, searched the car, and subsequently found the opium above mentioned. Speed admitted that he bought the opium in Santa Barbara from some Italian; that he was an ex-convict; that his wife was working as a prostitute; and that he was a pimp. Speed told the officer that he was going to plead guilty to the charge of transportation of narcotics since October, 1938.

Respondent further introduced evidence in rebuttal that the address given to the conditional seller by Speed was fictitious and that this was known to appellant through the report of an insurance company affiliate made in connection with the latter's investigation of Speed as an insurance risk.

Appellant now claims that under these facts the investigation conducted was at least as much, if not greater than the investigation which would have been made concerning a conditional sales contract on an automobile by any reasonable person; that it exceeded the requirements of section 15 of the State Narcotic Act and that full compliance having been made, the judgment of the lower court should be reversed, giving appellant a judgment for the amount of its lien.

A review of the cases pertaining to the sufficiency of the investigation, or in other words what a reasonable investi-

gation is under section 15 of the State Narcotic Act, discloses that there are but few cases involving forfeitures. As collated, they are briefly as follows:

In *People* v. *One Ford V8 Tudor Sedan,* 12 Cal. App. (2d) 517 [55 Pac. (2d) 908], the rights of a conditional sales vendor and its assignor were in issue. The ground upon which the appeal was taken was that the record disclosed no evidence showing compliance by the complainant or its assignor with the provisions of section 15–(e) of the State Narcotic Act. The evidence on the subject was not related, but the court sustained the state's contention and in disposing of the question said that because respondent had made no attempt to dispute any of the points made by the state with respect to the reasonable investigation of the responsibility, character and reputation of the purchaser, the decision of the trial court in favor of the respondent was not supported by the evidence. The appellate court reversed the judgment and ordered the car forfeited to the state.

In *People* v. *One Lincoln 8, etc.,* 12 Cal. App. (2d) 622 [55 Pac. (2d) 925], the conditional vendor inquired at the purchaser's bank as to his financial standing and interviewed two references. One reference stated that the purchaser was "a good old soak" and the other told her he was "a very fine gentleman". In reversing the trial court on the question of the sufficiency of the evidence to justify the finding that the vendor had made a sufficient investigation as to the moral responsibility, character and reputation of the vendee, the appellate court held the investigation legally insufficient.

In *People* v. *One La Salle, etc.,* 23 Cal. App. (2d) 237 [72 Pac. (2d) 766], although no evidence was offered by the conditional vendor as to its investigation, the court held that the burden of proof was upon the claimant to show that the conditional vendor had made a reasonable investigation of the purchaser's responsibility, character, and reputation, and in the absence thereof, the state was entitled to a judgment of forfeiture without showing on its part that the vendor by conducting a reasonable investigation could have discovered facts which would have put a prudent seller on inquiry as to the possible legal or illegal use of the automobile.

In *People* v. *One Pontiac 8 Sedan, supra,* the rights and duties of an assignee of a conditional sales contract are clearly set forth. Although it was apparent that no investi-

gation was made by the assignee, the court held that the state was not required to show that such an investigation would have developed knowledge of the intended illegal use.

In *People* v. *One Plymouth Sedan, etc.*, 21 Cal. App. (2d) 715 [69 Pac. (2d) 1011], the registered owner loaned an automobile to a third party from whose possession it was taken for a violation of the State Narcotic Act. The appellate court affirmed the trial court's finding that a reasonable investigation had been made of the purchaser by the finance company. The evidence showed that the vendee was a butcher by trade and had been employed in a market; that his employer was visited by an agent of the finance company who made inquiry concerning his character and reputation and was assured that he was all right. A certain credit association had also assured the finance company that the purchaser was responsible.

In *People* v. *One Harley-Davidson Motorcycle, supra,* the vendor sold a motorcycle to a Chinese boy named Lee, after making what was contended to be a reasonable investigation. This consisted of obtaining the names of three references, one a 17-year-old Chinese boy and another the name of the Chinese firm by whom the purchaser was employed. The vendor inquired of the latter's employer only whether he was employed there. The Supreme Court held that such investigation was insufficient, and said:

''The evidence as to efforts to check on the whereabouts and activities of Lee, made when he was found to be an offender, most strongly indicates that the seller of the motorcycle would not, as a reasonably prudent man, have entered into the contract if he had sought any reliable information about Lee.''

In *People* v. *One Packard 6 Touring Sedan*, 26 Cal. App. (2d) 150 [79 Pac. (2d) 130], the court held that there was no reasonable investigation, where an employee of the seller testified that he asked a garage man about the purchaser's character and financial status and was told that she was a very wonderful woman, had a good standing in the community, and came from a very nice, wealthy family, but the garage man testified that no such inquiry was made, that the only inquiry made of him was as to her credit standing, and that he knew her only as a customer and had no other information to give.

■ Appellant claims that in the establishment of its claim of title or interest it is entitled to rely, not only upon the independent investigation made by it, but in addition, the investigation made by the original conditional vendor. We are inclined to the opinion that unless the assignee makes inquiry of the vendor as to the information obtained by him, or otherwise obtains such information from him, the assignee would not be entitled to use such evidence in support of its claim. If the interpretation be otherwise, any original vendor might discover, after an incomplete investigation, that he had sold a car to a person who was not morally responsible and not possessed of a good character and reputation and was a reputed narcotic violator, and might thus avoid the liability of forfeiture by assigning his contract to a third party. Could it be claimed that the third party, the assignee, might then omit the necessity of an independent investigation of its own, and rely upon the original investigation of the vendor as the basis of its claim? We think not. For if it be otherwise, the purpose of this provision of the act pertaining to forfeitures could be easily defeated. We do not intend to convey the impression, however, that such evidence as was obtained by the vendor could not be used by the assignee in support of its claim, if it were properly communicated to the assignee as a part of its investigation prior to or at the time of the purchase of the contract by the assignee. The evidence in the instant case does not show any inquiry of the vendor by the assignee as to his investigation. Therefore, the results of his investigation would not be available to appellants. The only evidence bearing upon the subject which the vendor turned over to the assignee was the purchaser's statement above mentioned. This contained no information of the purchaser's character, reputation, or moral responsibility, but only furnished information through which an investigation might be made. To the average rational thinking mind it will probably be conceded, if we accept the facts related as true, that Speed was not possessed of a good character, reputation and moral responsibility. In view of all the facts mentioned, it seems to us, if due inquiry had been made at the proper places and from the persons most likely to know his reputation for the traits involved, appellant might well have discovered that Speed was not possessed of those attributes above mentioned. We see no logi-

cal reason to hold that the trial court was not justified in concluding that the facts relied upon were legally insufficient to constitute a reasonable investigation under the circumstances. We are unable to hold, as a matter of law, that they were sufficient.

Appellant next argues that there was no finding by the trial court in reference to reasonable investigation. The court found:

"IV. That the right, title and interest in said vehicle of Bank of America National Trust and Savings Association was not created therein after a reasonable investigation of the moral responsibility, character or reputation of said William J. Speed, the purchaser thereof, named in said conditional sales contract."

This finding was sufficient on that issue. A similar finding was made in *People* v. *One Lincoln 8, etc., supra,* and was approved. We see no merit to this argument.

Finally, appellant contends that the notice of seizure and intended forfeiture proceedings filed by respondent did not state a cause of action under the act. Similar notices were approved by the appellate courts in many of the cases herein cited. In the case of *People* v. *One 1933 Plymouth, etc.,* 13 Cal. (2d) 565 [90 Pac. (2d) 799], a notice practically identical was involved and approved, and it is therefore conclusive on this issue.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.