[Civ. No. 8916.   Third Dist.   Nov. 20, 1956.]

THE PEOPLE, Appellant, v. ONE 1952 FORD SEDAN, ENGINE NUMBER B2KC137252, Defendant; MOR-THRIFT FINANCE COMPANY (a Corporation), Respondent.

Edmund G. Brown, Attorney General, F. G. Girard, Doris Maier and G. A. Strader, Deputy Attorneys General, for Appellant.

James K. Bullock for Respondent.

SCHOTTKY, J.—A notice of seizure and intended forfeiture proceedings against one 1952 Ford Sedan was filed in the superior court and service was made upon David Russell, the registered owner, and on the Morthrift Company, the legal owner.   Both defendants filed answers denying that the vehicle was used to unlawfully transport narcotics, as prohibited by section 11610 of the Health and Safety Code,

and Morthrift Finance Company also pleaded that their interest in the vehicle was created following a sufficient investigation of the moral character of David Russell, the purchaser. Following a trial before the court sitting without a jury judgment was entered forfeiting the vehicle to the People of the State of California. This judgment also provided that Morthrift Finance Company was the owner of a lien against the defendant automobile not to exceed the amount of $1,097. This appeal is by the plaintiff, the People of the State of California, from that portion of the judgment wherein it ordered that Morthrift Finance Company held a lien against the automobile.

The record shows that on June 5, 1954, David Russell entered into a conditional sales contract with Olson Motor Company for the purchase of the defendant vehicle and that prior to entering into the contract a purchaser's statement had been taken from David Russell, which said statement was reviewed by Mr. Olson prior to the execution of the contract. The statement revealed the purchaser had listed two personal references and three business references. One of the references, Chris Johnson, a Sacramento attorney, was contacted by Mr. Olson and after being informed that Russell was purchasing a car from Olson, was asked what he (Johnson) knew about Russell. Mr. Johnson stated in substance that Russell was a very fine looking boy; that he paid his bills and that he was O.K. Mr. Olson testified that it was unusual for an attorney to be shown as a reference; however, that after talking to Johnson and obtaining the above information, he did not inquire further for fear of violating the attorney-client relationship. Mr. Olson stated he did not contact the two personal references because he could not find telephone numbers for them. He did, however, telephone the father of the purchaser, whose name was shown on the purchaser's statement, and was by him informed that the boy was a good boy, made good money, had a steady job for the last one and a half years; that he received some compensation from the Veteran's Administration, and that he paid the parents $50 a month for subsistence. Olson had earlier in the conversation informed the father that his son was purchasing a car and asked if it would be all right. After this conversation, Olson then approved the order and had the sales contract executed and then assigned it to Morthrift Finance Company. Upon receipt of the conditional sales contract and the purchaser's statement, Morthrift Finance

Company telephoned the Retailer's Credit Association, one of the references, and requested a report on the purchaser. The report showed that the file was incomplete, however that the purchaser was making $1.56 an hour at his place of employment, that he received money from the Veteran's Administration, that he was living at the reported address and that two small collection accounts had been reported to the bureau. There was nothing derogatory in the report. Morthrift Finance Company then telephoned another reference, Dynan Finance Company; however, they had no information on the purchaser. A check was then mailed to Olson Motor Company in payment of the contract. The evidence shows that the unpaid balance due Morthrift Finance Company was $1,097. The record also shows that neither the seller nor the finance company had any notice or knowledge that the vehicle was to be used for any illegal purposes.

Appellant contends that the evidence is insufficient to support the court's findings that the Olson Company conducted a reasonable investigation of the moral responsibility, character and reputation of the purchaser, Russell, prior to entering into the conditional sales contract, and that the interest of the Morthrift Company in the vehicle was created after a reasonable investigation of the moral responsibility, character and reputation of Russell had been conducted.

Respondent in reply contends not only that reasonable character investigations were made by the Olson Company and by respondent company independently, but also that respondent company is entitled to the benefit of the investigation of the Olson Company even though the results of said investigation were not communicated to it.

Health and Safety Code, section 11620, provided at the time this action arose:

"The claimant of any right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being or was to be, used for the purpose charged."

We shall first decide whether or not respondent Morthrift Company was entitled to the benefit of the investigation made by its assignor, the Olson Motor Company. Appellant contends that respondent was not so entitled and relies strongly upon *People* v. *One 1938 Buick Sedan*, 39 Cal.App.

2d 42 [102 P.2d 447], in which case it was stated that an assignee of a conditional sales contract cannot receive the benefit of an undisclosed investigation made by the assignor.

Respondent states that this same question arose in the case of *People* v. *One 1949 Ford Tudor Sedan,* 115 Cal.App.2d 157 [251 P.2d 776], in which case a car was sold under a conditional sales contract and the court found that the seller had made a reasonable investigation prior to the sale. The contract was then assigned to the bank which failed to make any independent investigation whatsoever. The trial court had made no express finding that the information gained by the seller's investigation had been conveyed to the bank prior to or at the time of the assignment. The appellate court, however, after adding to the findings a finding to the effect that the information gained by the seller had been communicated to the bank, said at page 163:

"Such finding is, however, not indispensable to support the judgment. It is our opinion that, under the law, assuming the investigation by S & C Motors was sufficient, the bank can rely on that investigation whether or not the results of the prior investigation were communicated to it. If a proper investigation is in fact made by the seller of the automobile it does not matter that a subsequent assignee made no independent investigation or did not know of the prior investigation by his assignor. The statute does not require that the claimant make the required investigation personally. Section 11620 of the Health and Safety Code merely requires the claimant to show that his interest 'was created after a reasonable investigation,' without specifying who must conduct that investigation. If the Legislature had intended that the claimant must make the investigation or must know of the results of a prior investigation, it would have been a simple matter to have so provided.

"A rule that the assignee could not depend upon a prior proper investigation made by his assignor, even though unknown to the assignee, would lead to absurd results. The assignment to the bank from S & C Motors, as is usual in such cases, contains an express guarantee that the purchaser, Cole, will make all payments due under the contract. If it be assumed that S & C Motors made a proper investigation, then, if it still held the conditional sales contract, its interest could not be forfeited. But if the bank, even without knowledge, cannot rely on the assumed proper investigation made by S & C Motors, then the bank's interest will be forfeited, and then

it could recover its total loss, including attorney's fees, from S & C Motors. Thus S & C Motors, a company that we have assumed fully complied with the statute, nevertheless would, in effect, have its validly created and forfeiture free interest in the car forfeited.

"The policy of the statute is to prevent automobiles, as far as possible, from falling into the hands of persons who will use them to transport narcotics. Such policy is amply served by interpreting the statute so that all that is required is a prior proper investigation. No useful purpose would be served by requiring each successive assignee to make his own investigation or know of the prior one.

"This point seems never to have been directly passed on in this state. It was discussed in *People* v. *One 1938 Buick Sedan*, 39 Cal.App.2d 42 [102 P.2d 447], where the court expressed, by way of dicta, the opinion that an assignee could not rely on a prior investigation made by the seller and unknown to the assignee."

The court then proceeded to discuss *People* v. *One 1938 Buick Sedan*, expressing the view that the statement that an assignee could not rely upon a prior investigation by the seller and unknown to the assignee was unsound and should not be followed. ▆ In view of the fact that a hearing was denied by the Supreme Court in the later case we believe that it must be held that respondent Morthrift Company was entitled to rely upon the prior investigation made by the Olson Motor Company.

In view of the foregoing conclusion the only remaining question that it is necessary to decide is whether the investigation made by the Olson Company was sufficient to satisfy the requirement expressed in section 11620 of the Health and Safety Code. There have been many cases discussing the sufficiency of the investigation required by the statute and the general principles laid down are well summarized in *People* v. *One 1940 Buick 8 Sedan*, 70 Cal.App.2d 542, at page 548 [161 P.2d 264], as follows:

"1. The defense that the investigation required by the statute has been made is an affirmative defense, and the burden or proof on the issue rests with the claimant.

"2. The question as to whether a proper investigation has been made is one of fact and is to be tested by the legal standards ordinarily applied to such fact questions.

"3. The statute does not prescribe the maximum or minimum of the investigation that must be made. It requires a

'reasonable' investigation of the factors involved. What is reasonable must be governed by the facts of each case.

"4. An investigation into the financial standing or the credit rating of the car purchaser is not sufficient—the law requires an investigation of the 'moral responsibility, character, and reputation of the purchaser.'"

Subject to these general rules it has been stated that a precise test is impracticable, that in the final analysis each case must be judged upon its own facts, and that the question of whether a proper investigation of the automobile purchaser as required by section 11620 of the Health and Safety Code has been made is one of fact and is to be tested by the legal standards ordinarily applied to fact questions.

In *People v. One 1953 Pontiac*, 135 Cal.App.2d 195, 199 [286 P.2d 885], cited by appellant, it is stated: "'A sincere investigation should disclose the home address of the prospective purchaser, his employer or place of business, the sources of his income, his family or social connections and his standing in his community.' [Citations.]" ▮ As pointed out by respondent, it ascertained from the purchaser's statement and from the purchaser's father, where the purchaser lived; the purchaser's statement, verified by the father, showed where the purchaser was employed, how long he had been employed and his total income. The family or social connections were ascertained by both the purchaser's statement and by the seller's conversation with the purchaser's father. The purchaser's standing in the community was ascertained by the seller's conversation with the father as well as with his attorney. It is fair to assume that if the purchaser's reputation in the community was bad, the attorney would have refused to discuss the matter rather than make the affirmative statement that the boy was O.K. Section 11620 requires only a "reasonable" investigation. What constitutes reasonableness is not a fixed rule governing all cases, but each decision must depend upon its own peculiar circumstances. The determination of reasonableness under this section is a question of fact and "it is beyond the power of the reviewing courts to interfere with the trial court's decision if the record discloses any evidentiary support therefor." (*People v. One 1939 Plymouth 6 Coupe*, 41 Cal.App.2d 559 [107 P.2d 266].)

While it is perhaps true that the investigation in the instant case was not exhaustive it was sufficient to convince an experienced trial judge that the Olson Motor Company

"did conduct a reasonable investigation of the moral responsibility, character and reputation of the purchaser." In view of the authorities hereinbefore cited, we are satisfied that the evidence in the instant case supports the conclusion that the investigation made was sufficient to satisfy a reasonably prudent man of the "moral responsibility, character and reputation of the purchaser."

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1957.