[Civ. No. 6138.   Fourth Dist.   Nov. 12, 1959.]

THE PEOPLE, Respondent, v. ONE 1956 PORSCHE CONVERTIBLE et al., Defendants; RICHARD S. FARR et al., Appellants.

Leonard V. Martin, Entenza & Gramer and M. E. Storrie for Appellants.

Stanley Mosk, Attorney General ,William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Respondent, People of the State of California, acting through the attorney general, filed with the county clerk on March 18, 1958, a notice under sections 11612, 11613, Health and Safety Code, to Richard S. Farr and Anita Farr, defendants and appellants, and registered coowners of one 1956 Porsche convertible car and to Ralph Cutright, Inc., record legal owner, that said vehicle was seized by the State Division of Narcotics Enforcement, pursuant to section 11611, Health and Safety Code, on December 7, 1957, because of unlawful use of such vehicle in unlawful transportation of a narcotic (heroin) therein by an occupant thereof in violation of section 11610, Health and Safety Code, in Oceanside, California, and that plaintiff intended to forfeit any rights they had in it. Due notice was given.

The Farrs answered and denied any knowledge of such unlawful transportation. Mr. Farr claimed he was an occupant of the car but had delegated the driving of it to one Murphy, whom he had employed to drive and accompany him to Arizona; that he (Farr) went to sleep and remained asleep until stopped by the officers.

E. E. North, defendant and appellant owner of the legal title, appeared in the proceeding and claimed he acquired the certificate of ownership and assignment of lien upon said car through Cutright, Inc., for a valuable consideration; that Cutright, Inc., was the automobile dealer who sold the car to Mr. Farr on August 1, 1956, for $4,364, upon which he paid $1,364 and Farr agreed in writing that Cutright, Inc., would retain the title and lien upon it until full payment of the purchase price; that the balance of $3,000 plus $300 interest was never paid; that the interest and lien of Cutright, Inc., was created after Cutright, Inc., had made a reasonable investigation of the moral responsibility, character and reputation of Farr; that the legal title and lien for unpaid purchase price belonging to North was valued at $3,300 and the value of the car on December 7, 1957, was less than $3,300. He seeks release of the car to him.

The evidence discloses that one Bennett, police sergeant at

Oceanside, received a call from a service station attendant, Hoskins, about 2:30 a. m. informing him that two persons were in his service station acting in a suspicious manner. He told the officer that they had gone into the restroom and had been there for some unusual time; that he looked in the window and observed one of the suspects (Farr) standing with his sleeve rolled up and with his arm arched in a suspicious manner; that he examined the restroom after they left in their car and found evidence of a bloody towel, a rubber band and burned matches. He described the car in which they were driving, believing it carried the number CGH *176* and gave a minute description of the two men. An all-unit alarm was given over the radio to apprehend them and the described car which proved to have license number CGH *196*. Soon thereafter another officer observed the described car with two male occupants and he followed it until further assistance arrived and attempted to block Farr's car, but it pulled away and went in another direction. He was finally stopped. Murphy, the. driver, was asked to step from the car and show his operator's license. Farr, the registered owner, stepped out of the other side. Acting on the information then available, the police asked them to remove their jackets and show their arms. They did so. Murphy had fresh puncture marks on his right arm and about five other little marks appearing to have been made by a needle near the elbow. Similar marks were observed on Farr but they were still bleeding. Both suspects were searched for firearms, placed under arrest, taken to jail and given certain tests, including an eye test for reaction to light. There was no reaction. It indicated that their eye pupils were contracted to the size of a pinpoint. The Porsche car was taken to the station and later searched. In one air duct near the front right passenger side, below the seat, was found a needle used for giving shots, an eye dropper and a spoon with a broken handle. It had a burned covering on it and the bowl part contained residue which was scraped off and found to contain heroin. The chemist testified he did not make a quantitative determination of the amount of heroin present but he was of the opinion it would not exceed a grain, probably equal to 3-4-5 granules or grains of salt ground up. In addition, there was also found in the car, on the right-hand side, two cigarette butts of marijuana and matches similar to the burned ones found in the restroom.

Farr entered a plea of guilty to a charge of possession of a narcotic in violation of section 11500, Health and Safety

Code. At the hearing of the instant matter, the Farrs did not testify in their own behalf and offered no evidence in support of their answer.

The legal owner, appellant Mr. North, testified as to the assignments alleged in his answer but said he knew that the vehicle had already been impounded by the state when he purchased the assignment. He did not claim he made a reasonable investigation of the Farrs' moral character under section 11620, Health and Safety Code, but argued that his assignor, Cutright, Inc., made such an investigation. The attorney general concedes that the law permits the assignee to rely on an investigation of assignor. (*People* v. *One 1949 Ford Tudor Sedan,* 115 Cal.App.2d 157, 165 [251 P.2d 776].) Respondent, however, claims the assignor failed to make a reasonable investigation. ▇▇▇ The burden of proving such an investigation rested upon the party claiming it. *People* v. *One 1949 Ford Tudor Sedan, supra.*

▇▇▇ Appellants, Farr, registered owners, on this appeal argue that this was not an adequate showing of the presence or transportation of a narcotic, sufficient in quantity, to justify the forfeiture. Section 11610, Health and Safety Code, *supra,* provides that "A vehicle used to unlawfully transport or facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept . . . or in which any narcotic is unlawfully possessed of an occupant thereof . . . should be forfeited to the State." Although the amount found in the spoon was not great, the evidence would justify the conclusion that the occupants of the car did transport heroin in violation of the statute and there was sufficient evidentiary proof that the remains analyzed did contain heroin. Mr. Farr plead guilty to the charge of possession of a narcotic. They cite *People* v. *One 1941 Cadillac Club Coupe,* 63 Cal.App.2d 418 [147 P.2d 49], indicating that the incidental finding of one marijuana cigarette in the car was not sufficient to forfeit it and to establish a use in transporting narcotics. In *People* v. *One 1940 Buick 8 Sedan,* 70 Cal.App.2d 542, 546 [161 P.2d 264], this statement was disapproved. There, where three grains of marijuana were involved, it was held it was not necessary to prove the transportation of any particular quantity of the drug. See also *People* v. *One 1941 Buick Club Coupe,* 72 Cal. App.2d 593 [165 P.2d 44]. In this respect, we conclude there was sufficient showing of transportation of a narcotic, in violation of the statute.

They next argue that the search of the car and seizure of the

evidence shown was without legal authority. Citing such cases as *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689]; *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13]; *People* v. *Hale,* 156 Cal. App.2d 478 [319 P.2d 660].

We conclude that the evidence produced justified the search and seizure and there was probable cause to make the arrest and to conduct the search incidental to it. (Section 836, subdivision 3, Penal Code.) In *People* v. *Brown,* 147 Cal.App.2d 352 [305 P.2d 126], it is said that ''reasonable and probable cause for belief that a person has committed a felony must be measured by the facts presented to the arresting officer at the time he is required to act, and there is probable cause for arrest when there is such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'' See also *People* v. *Simpson,* 170 Cal.App. 2d 524 [339 P.2d 156]; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896]; *People* v. *Soto,* 144 Cal.App.2d 294 [301 P.2d 45]; *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528].

In addition, no objection was made in the trial court by this appellant to the admission of this evidence on the ground here stated and it cannot be raised for the first time on appeal. (*People* v. *Shannon,* 147 Cal.App.2d 300 [305 P.2d 101]; *People* v. *Mann,* 148 Cal.App.2d 851 [307 P.2d 684].)

Lastly, it is suggested that even if the registered owners' interest is forfeited, the legal owner should have the car released to him; that the court made no findings to the effect that the car was worth less than the balance due from appellants Farr to the owner. Citing section 11622, Health and Safety Code. The record contains a stipulation of the parties that the balance due on December 7, 1957, was $3,240 and its value as of that date was $3,090. In view of the stipulation and under the conclusions here reached, no such finding was necessary.

Appellant, North, the claimed legal owner, argues that the car should be released to him because an assignee may rely on his assignor's reasonable investigation of moral character of the purchaser and he claims the finding of the trial court that the legal owner's assignor, Cutright, Inc., did not make such an investigation is contrary to the undisputed evidence and not a reasonable finding. Citing section 11622, Health and Safety Code.

At the hearing, Mrs. Gramer, mother of Richard Farr,

testified she was present at the time of the purchase of the car by her son from Cutright, Inc.; that Mr. Cutright, Mr. Moulton, the sales manager, and Mr. Inman, the salesman who participated in the sale were present; that they asked her questions as to what kind of people the Farrs were, their income, financial means and employment, and she told them in some detail that they were financially responsible and "good kids" and had never been in trouble of any kind that would affect their moral character or financial ability to pay; that they both lived in the vicinity many years and were respected members of the community. Mr. Moulton's deposition was received in evidence on behalf of appellants. He testified, in part, that he was sales manager and had occasion to talk to the Farrs concerning the purchase of the automobile involved; that he made an investigation of them at the time of the purchase; that there were two things he was primarily concerned with, to wit, ability to pay and willingness to pay; that he called the bank and inquired as to their account; that a man he talked to told him that the Farrs had been reliable and honest and would be a good risk; that he verified employment of Mr. Farr with the theater and found that his work had been satisfactory and that he was reliable and prospects were that Mr. Farr's work would continue; that he didn't make a specific inquiry about Mrs. Farr, except for her employment because "we assume that anyone who is working for the bank would have to be satisfactory"; that he talked with Mrs. Gramer at Cutright's premises; that at various times Cutright and the Farrs were present with him; that Mr. Moulton said the thing that made the sale so unusual is that Cutright was taking the trust deed on a piece of property as security; that Mr. Moulton stated that Mrs. Gramer had told him that Richard and Anita Farr were "good kids" and quite responsible for their age and that they owned their own home in Malibu; that Mr. Moulton stated that he had no reason to believe that the automobile he sold would ever be used unlawfully, or ever be used for the unlawful transportation of a narcotic. When asked if he made any inquiry of Richard Farr's moral responsibility, moral character, integrity, and reputation, he replied "Yes, but not in those specific terms." When asked if he inquired of the banker as to what he thought of Mrs. Farr, as an individual, he replied, "only in relation to a good risk."

In rebuttal, one of respondent's agents testified that on

June 9, 1958, he had a conversation by telephone with Cutright and Cutright said that he did not ask anyone about the moral turpitude of the Farrs; that no such investigation was made and that none was made by Moulton to his knowledge; and that they were most concerned with his credit reputation. He testified that in a later telephone conversation with Moulton, Moulton stated he had a conversation with Mrs. Gramer in reference to Mr. Farr's ability to pay for the vehicle; that he stated in that conversation that he had asked no questions of her relating to the moral turpitude or morals of the Farrs; that he said all the conversation was directed towards his credit, his ability to pay and credit reputation. Upon this evidence the trial court found that appellant North failed to establish reasonable investigation as to Farr's moral responsibility, character and reputation "within the meaning of the law."

While the evidence produced, if believed by the court, might well have been sufficient to warrant a contrary finding, the question of the reliability and weight of the evidence was for the determination of the trial court and we cannot, as a matter of law, otherwise conclude. *Gould* v. *Escondido etc. Ass'n.*, 56 Cal.App.2d 681, 686 [133 P.2d 448]; *Donato* v. *Lopopolo*, 20 Cal.App.2d 409 [66 P.2d 1256]; *People* v. *One 1941 Chevrolet Coupe*, 113 Cal.App.2d 578 [248 P.2d 786].

We see nothing uncertain about the findings in this respect, as contended by the appellant, North. They support the judgment and it does not conflict with the language there used.

Judgment affirmed.

Shepard, J., concurred.