[Civ. No. 19561.   First Dist., Div. One.   July 21, 1961.]

THE PEOPLE, Appellant, v. ONE 1959 CHEVROLET 2-DOOR SEDAN, ENGINE NO. B59L207490, Defendant; AMERICAN TRUST COMPANY, Claimant and Respondent.

Stanley Mosk, Attorney General, Arlo E. Smith and John S. McInerny, Deputy Attorneys General, for Appellant.

Lane P. Brennan and Brobeck, Phleger & Harrison for Claimant and Respondent.

HOYT, J. pro tem.*—This action was brought by the State of California under Health and Safety Code, sections 11610-11629, for the forfeiture of a 1959 Chevrolet automobile used in transporting narcotics. The registered owners were Mr. and Mrs. Robert C. Prado. The Prados defaulted and the legal owner the American Trust Company (hereafter called the bank) appeared and defended. The question is whether the bank's interest was created ''after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser. . . .'' as required by section 11620 of the Health and Safety Code as it read at the time of Prado's arrest. The trial court found in favor of the bank, and the State of California appeals from the judgment.

The evidence concerning the investigation of the Prados was as follows: Howard R. Cuyler, an automobile dealer, made a sale of a 1956 Chevrolet automobile to the Prados about January 1959. Prado turned in the 1956 Chevrolet on the 1959 Chevrolet on July 27, 1959, and this contract was assigned to the bank on August 4, 1959. Cuyler first met Prado about September 1958. During the 11 months from their first meeting to the time of the sale of the 1959 Chevrolet, Cuyler saw him ''several dozen times'' at his place of business. Cuyler had known Prado's wife and her relatives for several years. He knew her mother and father and several of her uncles. Prado's mother-in-law, Mrs. Alex, has ''the highest reputation.'' An uncle of Mrs. Prado's, Nick Gust, is the owner of the Rockaway Beach Motel and Restaurant. He has been a customer of Cuyler's for the last three years and is ''a very sound businessman of good reputation.'' He also has been active in community affairs. Another uncle runs a service station, is also well known, well liked ''and being a businessman he had to maintain a good reputation.'' Mrs. Prado has a brother who is well liked and accepted in the area.

Cuyler had continuous interviews with Prado between the sales of the first and the second automobiles, contributing to his appraisal of Prado's character. Mrs. Alex told Cuyler that Prado ''was a hard-working young fellow and was trying hard to get himself established''; that he had an honest desire to

*Assigned by Chairman of Judicial Council.

pay his bills. Mr. and Mrs. Prado rented from Mr. and Mrs. Alex "so they were under pretty much their constant supervision. . . ." When he bought the 1959 Chevrolet Prado was employed by Oddstad Homes, as an apprentice carpenter. Prado was in and out of Cuyler's place of business on an average of once a month. At the time of the sale of the 1959 Chevrolet, Cuyler believed Prado "was a man of good moral character, responsibility, and reputation."

Loren Frigault, a loan officer for the Burlingame branch of the American Trust Company, testified that he handled the automobile transactions with Prado for the bank. On the 1956 Chevrolet, which was assigned to the bank in February 1959, a report was obtained from the Burlingame-San Mateo Credit Bureau. This report showed Prado's name and address, verification of his employment, and that he "would probably be a steady employee." The credit bureau was instructed to give the bank all adverse information concerning the moral character, reputation, responsibility and prior arrests of the person upon whom the report was made. Nothing derogatory was shown in this report. Appellant contends that the credit bureau report of February 1959, is untimely as applied to a sale on August 4, 1959, but this rather goes to the weight of the report than to its admissibility. Through Cuyler we know that the items concerning Prado's place of employment and address were the same at the date of the sale of the 1959 Chevrolet as at the date when the report was made in February 1959. The bank's experience with Prado was excellent on the loan on the 1956 Chevrolet.

As indicated above Cuyler had known Mrs. Prado for sometime, knew her relatives, knew their reputations, knew that the Prados had recently had a baby, knew that they were pretty much under the constant supervision of Mr. and Mrs. Alex, knew that Mrs. Alex offered to assist the "youngsters" in the automobile purchase and had a "definite interest" in the amount of money for which they obligated themselves.

The investigation of Cuyler and the bank must be viewed as part of a single investigation regardless of whether Cuyler communicated his information to the bank. (*People* v. *One 1952 Ford Sedan*, 146 Cal.App.2d 183, 187 [303 P.2d 832].) Having seen Prado frequently over a period of 11 months, we cannot say that Cuyler was not in a position to form a reliable opinion as to his reputation, moral character and responsibility. Since Cuyler knew Mrs. Prado's mother

and father, two of her uncles and her brother, each of whom had a good reputation; since he had known Mrs. Prado for a substantial length of time; and since he had known and seen Prado frequently for 11 months before the sale of the defendant automobile, we cannot say that the trial court was in error in concluding that the bank acquired its interest in the automobile after a reasonable investigation of the moral responsibility, character and reputation of Prado and his wife.

"While the evidence produced, if believed by the court, might well have been sufficient to warrant a contrary finding, the question of the reliability and weight of the evidence was for the determination of the trial court and we cannot, as a matter of law, otherwise conclude." (*People* v. *One 1956 Porsche Convertible,* 175 Cal.App.2d 251, 258 [345 P.2d 986].)

The judgment is affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.