Filed 8/27/25  P. v. Rayford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100497 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE016783) |
| v. | |
| ROY A. RAYFORD, | |
| Defendant and Appellant. | |

A jury found defendant Roy A. Rayford guilty of two felony vandalism charges. The trial court sentenced him to the upper term of three years for one charge and a concurrent term for the other.  Although the court reserved jurisdiction as to victim restitution, the abstract of judgment indicates a dollar amount owed.

On appeal, defendant contends:  (1) the trial court abused its discretion by consolidating the charges; (2) the surveillance evidence offered to prove one charge lacked adequate foundation; (3) there was insufficient evidence to sustain a felony conviction for one charge; (4) resentencing is required because the trial court considered an impermissible factor in imposing the upper term; and (5) the abstract of judgment

1

must be corrected to strike the victim restitution amount. The last contention has merit. We order correction of the abstract as to victim restitution and otherwise affirm. We also deem the abstract, as corrected, to prevail over any contrary statements in the reporter's transcript. Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with committing vandalism (§ 594, subd. (a)) by damaging a train window belonging to Sacramento Regional Transit (SacRT) on May 4, 2022 (the 2022 charge). He was separately charged with committing the same offense on March 30, 2023 (the 2023 charge), but this time by damaging "[w]indows" belonging to the California Department of Transportation (Caltrans). Both offenses were charged as felonies based on the allegation that the damage in each case exceeded $400.

The prosecution later moved to consolidate the two charges on the grounds that (1) they were the same class of crimes; (2) the evidence was cross-admissible; (3) the victims were government entities; and (4) the same detective investigated them. Defendant opposed consolidation, arguing that the offenses involved different victims, were separated by almost a year, and lacked common evidence. Defendant also insisted he would suffer substantial prejudice from consolidation because the jury would be likely to conclude he had a propensity to commit one offense based on the other.

The trial court acknowledged that "any joinder has the potential to bootstrap propensity evidence from one as to the other, but there are certain considerations of judicial economy as well as these charges are the same class of crimes." After noting cross-admissible evidence and crimes that were similar in execution, the court granted the motion. Trial proceeded over the course of one day.

# I

## *Evidence of the 2022 Charge*

A transit ambassador for SacRT testified that on May 4, 2022, he saw defendant get off of a SacRT train and throw an object. The object hit a train window hard, causing the window to crack like a spider web.

The detective assigned to this case testified that he identified defendant as the person who threw the object by watching a surveillance video provided by SacRT and conducting a photo lineup with the transit ambassador. The surveillance video was played for the jury. It showed a man get off the train, pick up a tumbler, and throw the tumbler at the train, hitting a window and causing the window to crack.

A SacRT maintenance supervisor estimated the total cost for the damage to the window to be $1,279.65, composed of $150 for the cost of glass and the remainder for labor.

# II

## *Evidence of the 2023 Charge*

A Caltrans building manager testified that she handles "any building issue" including vandalism. She was made aware that a vandalism incident occurred at the building late at night on March 30, 2023. The property manager informed her of this incident the next morning. The building manager got camera footage of the incident from the building's security office and saw "glass broken all over the place" and at least two windows "being boarded up." An outside vendor completed the boarding and provided a quote for the repairs. The building manager wasn't sure if other bids were obtained.

A California Highway Patrol officer (CHP officer) went to the building on April 4, 2023 in response to a vandalism report. He saw two of the building's windows covered by plywood in lieu of glass. The prosecution presented a picture of a door-length window covered with plywood, and the CHP officer confirmed this was one of the broken windows he saw, specifically in the lobby of the building. On April 10, 2023, the

3

CHP officer received surveillance footage of the incident from the building's security manager. After the prosecution played a portion of the footage, the CHP officer confirmed that the footage (1) was the video he received and (2) indicated the incident occurred on March 30, 2023. The prosecution then sought permission to publish to the jury, defendant objected for lack of foundation, and the court overruled the objection.

On the left-hand side of the frame, the video shows a man pick something up from the ground next to the building and then exit the frame. From the place where the man exits, a rock appears in the air, hits the building, and rolls into the driveway next to the building. The same man enters the frame, picks up the rock, and throws it at the building. Although a column prevents the viewer from seeing the rock hit the building, both the rock and pieces of glass appear on the inside floor of the building. According to the CHP officer, the rock was thrown at the same lobby window he saw boarded up on April 4, 2023.

The detective from the 2022 charge testified that he viewed the video as part of a larger effort to identify the perpetrator. He was able to identify the man as the same perpetrator of the 2022 charge.

The vendor that boarded up the windows at the Caltrans building provided an estimate for the cost of repairs. That estimate identified three large pieces of glass with custom tint in need of replacement – one at the main entrance of the Caltrans building, one at the office side of the Caltrans building, and another at a different location. The total estimated cost was $6,144.25, not including the emergency board-up cost of $4,420.42. The representative for the vendor explained the emergency board-up cost: she testified that the vendor received a call "that someone damaged three windows, and they needed to board up for security, so [the vendor's] technicians were dispatched on double time to go out and provide a secure board-up." Because the work had to be done quickly and after 10 p.m., the labor for the emergency board up was $600 an hour for six and a half hours. The technicians conducting the board-up took measurements and

4

photos, both of which the vendor reviewed. The representative admitted that the windows were different dimensions that meant each window had a different cost, but the estimate did not specify the window dimensions or break down the cost to repair each window.

III

*Jury Instructions, Closing Arguments, and Verdict*

Among other instructions, the trial court instructed the jury that defendant was charged with two counts of vandalism, each of the counts was a separate crime, and the jury needed to consider each count separately.

In closing argument, the prosecution also addressed each charge separately and argued how the elements were satisfied for each. As to the 2023 charge, the prosecution argued that defendant clearly broke one window, causing damage well over $400. In his view, the jury could not reasonably conclude that the damage to this window was under $400 while the damage to the two other windows made up the remainder of the $10,000.

Defense counsel admitted that a video showed defendant throwing a rock "through at least one window" but argued that the prosecution failed to establish the damage for that window beyond a reasonable doubt because the evidence included two other windows and no breakdown. He also questioned whether the emergency board-up costs were completely necessary and suggested the jury lacked the information necessary to make that call. As to both charges, defense counsel suggested that the repair estimates were padded and overblown, comparing them to inflated estimates customers receive for emergency veterinary care.

The jury found defendant guilty of breaking a window belonging to SacRT on or about May 4, 2022 and breaking "a window" belonging to Caltrans on or about March 30, 2023. The jury also found true the allegation that the damage for each charge was more than $400. In a separate trial, the prosecution presented a certified record that

5

defendant was convicted of robbery (§ 211) in 1998 and was sentenced to six years. The jury found the allegation true that defendant had a 1998 conviction for robbery.

IV

*Sentencing and Appeal*

In his sentencing brief, defendant asked the court to strike the 1998 conviction under *People v. Romero* (1996) 13 Cal.4th 497 and impose concurrent, low terms of 16 months for each charge. The probation report recommended an aggregate term of four years consisting of: (1) the lower term of 16 months for the 2022 charge, doubled because of the 1998 conviction, and (2) a consecutive eight-month term for the 2023 charge, also doubled because of the 1998 conviction.

At the sentencing hearing, the court advised the parties that its "tentative ruling" was to strike the 1998 conviction but impose the upper term of three years. The court commented that "an attack on public property really contributes to the overall decay of the city" and "makes people afraid to use public transportation." The court admitted this was "not an expressed aggravating factor, but it [was] a factor. The expressed aggravating factor is what [the court had] already found, which is the prior prison commitment." Defense counsel stated that she was "not trying to minimize destruction or vandalism of public property" and asked the court to consider imposing the midterm rather than the upper term based on defendant's childhood trauma and alcoholism playing substantial factors.

After allowing additional argument, the court announced its decision: it "found the aggravating circumstances based on the prior prison term proven by [the prosecution]. [That is what got it] to the high term of three years on [the 2022 charge]," and based on the mitigating circumstances, it imposed a concurrent term on the 2023 charge. The three years would be served locally, and the concurrent term would be eight months. Although the court retained jurisdiction for purposes of victim restitution, the abstract of judgment indicates that defendant owes over $10,000 in such restitution.

6

Defendant timely appeals.

## DISCUSSION

## I

## *Consolidation*

Defendant contends the trial court abused its discretion by granting the prosecution's motion to consolidate the charges. We disagree.

Because joint trial avoids the increased expenditure of funds and judicial resources, the law prefers consolidation of charges. (*People v. Soper* (2009) 45 Cal.4th 759, 771-772.) Where the offenses charged are of the same class, as here, joinder is proper under section 954. (*People v. Manriquez* (2005) 37 Cal.4th 547, 574; *People v. Kemp* (1961) 55 Cal.2d 458, 476 [offenses of the same class are offenses possessing common characteristics or attributes].) The party seeking severance bears the burden of clearly establishing substantial danger of prejudice requiring that the charges be tried separately. (*People v. Hin* (2025) 17 Cal.5th 401, 438.) The showing of prejudice must be stronger than the showing necessary to exclude evidence of other crimes in a severed trial. (*People v. Simon* (2016) 1 Cal.5th 98, 123.)

A trial court's joinder ruling is reviewed for abuse of discretion. (*People v. Maury* (2003) 30 Cal.4th 342, 391.) We consider four factors: (1) whether evidence of the crimes was cross-admissible; (2) whether the charges were especially inflammatory; (3) whether a weak case was joined with a strong case or another weak case so that the totality of the evidence could alter the outcome as to some or all of the charges; and (4) whether joinder renders a noncapital case a capital case. (*People v. Gomez* (2018) 6 Cal.5th 243, 276.) In this noncapital case, we examine only the first three factors.

As to the first factor, defendant contends there was no cross-admissible evidence offered at trial. This contention focuses on the one common witness the prosecution offered – the investigator for the 2022 charge who identified defendant as the perpetrator in the 2023 charge. Although a common witness is not necessarily coextensive with

7

cross-admissible evidence, having one witness testify regarding two incidents is relevant to judicial economy. (See *People v. Balderas* (1985) 41 Cal.3d 144, 174, superseded by statute on other grounds as stated in *People v. Martin* (1998) 64 Cal.App.4th 378, 385.) In addition, we review the trial court's consolidation decision based on the facts before the court at the time of the ruling. (*People v. Marshall* (1997) 15 Cal.4th 1, 27.) Here, from the trial court's perspective, the lead investigator for the 2022 charge was the person who linked defendant to the surveillance video in the 2023 charge. The trial court could reasonably anticipate that this witness would offer cross-admissible evidence at trial. (*Balderas*, at p. 174 [where common police investigation of two incidents was conducted, "it was reasonable to assume that there would be common police witnesses" at trial].) In any event, the absence or minimal use of cross-admissible evidence does not establish an abuse of discretion when the charges are joinable and the remaining factors favor consolidation as they do here. (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1435-1438; see also § 954.1.)

As to the second factor, the incidents were of similar levels of severity: defendant threw an object at windows of a public entity and caused the windows to crack or break. Neither charge was particularly likely to inflame the jury against defendant. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 631.)

As to the third factor, we reject defendant's contention that the likelihood of guilty verdicts was enhanced because two weak charges were joined or a weak charge was joined with a strong charge. As to both charges, there was compelling video surveillance evidence regarding defendant's actions. We disagree with defendant's characterization of the 2023 charge evidence as "scant." The fact that evidence of the 2022 charge included eyewitness testimony does not sway us: " '[a] mere imbalance in the evidence between the joined crimes does not signal a risk that one charge will be prejudicially bolstered.' " (*People v. Gomez*, *supra*, 6 Cal.5th at p. 277.) According to defendant, both cases were weak because "overblown" estimates were used to establish damage value.

8

This contention falls short. The concern with joining weak charges is that the jury will aggregate the evidence and convict on charges that might not merit conviction in separate trials. (*People v. Turner* (2021) 73 Cal.App.5th 117, 126-127.) Defendant does not contend that such aggregation occurred here, and we see no basis for that concern either.

For these reasons, defendant fails to establish that the trial court abused its discretion when it granted the prosecution's motion to consolidate the charges.

We also reject defendant's assertion that events *after* the court's ruling demonstrate that joinder resulted in gross unfairness to defendant amounting to a due process violation. " 'Whether joinder worked a gross unfairness turns upon assessing whether it was "reasonably probable that the jury was influenced by the joinder in its verdict of guilt." ' " (*People v. Lamb* (2024) 16 Cal.5th 400, 419.) A defendant bears the high burden of establishing gross unfairness amounting to a due process violation. (*People v. Ybarra*, *supra*, 245 Cal.App.4th at p. 1438.)

Here, apart from the purported absence of cross-admissible evidence at trial, defendant does not point to anything that occurred after the trial court's consolidation ruling that would suggest joinder influenced the jury. His reiteration of his arguments regarding the joinder factors does not establish the required prejudice. Further, "[a]ppellate courts have found ' "no prejudicial effect from joinder when the evidence of each crime is simple and distinct," ' " as was the case here. (*People v. Soper*, *supra*, 45 Cal.4th 759, 784.) And finally, the jury was specifically instructed to consider each count separately, and defendant has not rebutted the presumption that the jury followed that instruction. (*People v. Merriman* (2014) 60 Cal.4th 1, 48-49.) We see no reasonable probability that joinder resulted in gross unfairness to defendant.

## II

### *Admission of Surveillance Video*

Defendant contends the trial court should have excluded the surveillance video associated with the 2023 charge because its authenticity was not established.

9

Specifically, defendant contends that no one testified regarding: (1) how the video was obtained, secured, and copied; (2) whether the video fairly and accurately represented the scene of the incident; (3) whether the date stamp on the video was correct and properly calibrated; (4) the existence of working cameras on the building; or (5) whether the building depicted in the video was the building at issue. These contentions are unpersuasive.

"A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.] This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. It may be supplied by other witness testimony, circumstantial evidence, content[,] and location." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267-268.) "[T]he proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error." (*Id*. at p. 267.) " 'As long as the evidence would support a finding of authenticity, the [video] is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the [video's] weight as evidence, not its admissibility.' [Citation.]" (*Ibid*.) We review the trial court's ruling on this issue for abuse of discretion and do not disturb the trial court's ruling except on a showing that it " 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Id*. at p. 266.)

Here, the CHP officer testified he received a report on April 4, 2023 that a Caltrans building had been vandalized. He went to the building, saw two broken windows, and received video footage of the incident from the building's security manager. When the video was played, the CHP officer confirmed it was the video the building manager provided. There is no question defendant was the person throwing the rock in the video. The building manager's testimony as to when she learned of the vandalism and her observation of broken glass there and two windows being boarded up corroborated the

10

CHP officer's testimony and the date of the surveillance video. Based on this evidence, a trier of fact could find that the video accurately represented defendant's conduct outside the Caltrans building in 2023.

III

<em>Sufficiency of Evidence</em>

Defendant contends there was insufficient evidence to sustain a felony conviction for the 2023 charge. This contention also fails.

Punishment for the crime of vandalism depends on the value of the damage. (*People v. Farell* (2002) 28 Cal.4th 381, 389.) If the damage is less than $400, the crime is punishable as a misdemeanor. (*Ibid.*) But if the damage is $400 or more, the crime is punishable as a felony. (§ 594, subd. (b); *In re. A.W.* (2019) 39 Cal.App.5th 941, 946-947.) To assess the sufficiency of the evidence, we review the entire record in the light most favorable to the trial court's judgment, evaluating whether reasonable and credible evidence of solid value has been disclosed. (*People v. Vargas* (2020) 9 Cal.5th 793, 820.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence" and " ' "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Baker* (2021) 10 Cal.5th 1044, 1103.) We will reverse only where there is " 'no hypothesis whatever' " upon which the evidence can be deemed sufficient. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Here, defendant contends the evidence was deficient in four ways. First, he contends no evidence was presented showing that the window was intact before defendant threw the rock. This contention lacks merit. The person charged with handling vandalism at the building received notice of vandalism that occurred the night before. She then saw broken glass all over the place and two windows being boarded up. Building security provided surveillance footage of the cause of the damage and that footage showed defendant throwing a rock through the building, causing glass to shatter.

11

From this evidence, the jury could infer beyond a reasonable doubt defendant was the only cause of the broken glass.

Second, defendant contends the evidence was insufficient to show that the damage to this single window was at least $400. We disagree. The jury saw a picture of this door-length lobby window boarded up and heard that the damage to this window and two others of unknown size was estimated to be over $6,000 in total, not including over $4,000 to board up the three windows as a temporary security measure. A reasonable fact finder could deduce that at least $400 of the over $10,000 glass replacement and board-up cost was attributable beyond a reasonable doubt to repairing the custom tint, door-length lobby window. Such a deduction is the product of logic and reason applied to the evidence, not mere speculation or guesswork as defendant suggests. (See *Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1584-1585 [explaining inference needed to supply substantial evidence].)

Third, defendant challenges the prosecution's reliance on an "estimate" as opposed to the "actual cost [of] repair." But courts have recognized that a "contractor's estimate of the cost to repair the actual damage . . . caused [may] suffice." (*In re Kyle T.* (2017) 9 Cal.App.5th 707, 714; see *People v. Santori* (2015) 243 Cal.App.4th 122, 126-127 [upholding restitution award based on estimate of damage actually caused by the defendant's graffiti].) Aware of this authority, defendant contends the prosecution did not provide an estimate to repair actual damage, attempting to analogize the prosecution's evidence to the average and one-size-fits-all costs considered and rejected in *Kyle T.*, at pages 714 through 715 and *In re A.W.*, *supra*, 39 Cal.App.5th at page 949. We reject the analogy. Here, the vendor's estimate identified the specific windows at issue and the vendor's employee testified that the vendor reviewed the measurements and photos taken by the board-up technicians. This evidence provides the necessary tether between the estimate and the facts of defendant's vandalism, distinguishable from the speculative estimates considered in *Kyle T.* and *A.W.* (Compare *Kyle T.*, *supra*, 39 Cal.App.5th at

12

p. 714 [evidence insufficient because it was "not an estimate tethered to the facts of [the defendant's] vandalism"] with *People v. Hurtado* (2019) 35 Cal.App.5th 871, 881 [crime prevention officer considered photographs depicting damage when calculating the repair cost not just an average repair cost].)

And fourth, defendant contends the estimate lacked reliability because it was exorbitant. But the reliability and weight of evidence is for the jury to decide. (*People v. One 1956 Porsche Convertible* (1959) 175 Cal.App.2d 251, 258.) Defendant made little effort to undermine the reasonableness of the estimate through cross-examination or presentation of other evidence, and the jury rejected his closing argument that the estimate was padded and overblown. We do not reweigh the evidence on appeal. (*Kyle T.*, *supra*, 9 Cal.App.5th at p. 712.) Defendant also does not argue or convince us that the estimate was inherently improbable or implausible. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 [unless inherently improbable, testimony of a single witness is sufficient to support a conviction].)

For these reasons, we find no merit to defendant's sufficiency of evidence challenge.

IV

*Sentencing*

Defendant contends the trial court violated his Sixth Amendment rights by imposing the upper term on the 2022 count based on urban decay and commuter fear, a factor defendant did not admit and the jury did not consider. The record defeats this contention.

Section 1170 prohibits a trial court from imposing the upper term unless there are circumstances in aggravation of the crime that justify that term and the facts underlying those circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or judge. (§ 1170, subd. (b)(2).) An upper term may be imposed based on a single, properly proven aggravating factor if, in the court's

13

discretion, that circumstance alone justifies a sentence exceeding the middle term. (*People v. Lynch* (2024) 16 Cal.5th 730, 764.)  Here, the trial court expressly stated that the upper term was based on defendant's prior prison term.  (Cal. Rules of Court, rule 4.421(b).)[1]  According to the record, this aggravating circumstance "was what got [the court] to the high term of three years" on the 2022 count.  Because of this express statement, we cannot find error in imposition of the upper term based on the court's mere mention of urban decay and commuter fear when it described its tentative ruling.  To the extent urban decay and commuter fear factored into the court's rejection of the lower term, defendant does not argue the court erred in such rejection.  (See § 1170, subd. (b)(6); Cal. Rules of Court, rules 4.408, 4.421(c), and 4.420(d); *People v. Sandoval* (2007) 41 Cal.4th 825, 840; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

V

*Abstract of Judgment*

The abstract of judgment is inconsistent with the trial court's oral pronouncement in three ways.  First, the trial court imposed a concurrent sentence for one-third of the midterm, but the abstract of judgment indicates a three-year concurrent term.  On this point, the abstract is correct.  Concurrent sentences must be imposed at the full base term. (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1156, fn. 3, disapproved on another ground in *People v. Poisson* (2016) 246 Cal.App.4th 121, 125.)  Second, the trial court pronounced that defendant would serve his term locally rather than in state prison, but the abstract states that defendant was committed to state prison.  The abstract is correct on this point too:  defendant was required to serve his sentence in state prison because of the 1998 conviction for robbery.  (§ 1170, subd. (f), (h)(3); § 1192.7, subd. (c)(19).)  And third, the trial court stated it would retain jurisdiction for purposes of victim restitution,

---

[1] Defendant does not challenge the court's use of the prior prison term factor.

14

but the abstract indicates victim restitution is owed in the amount of $10,564.67. On this point, the oral pronouncement prevails over the abstract. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

Under these circumstances, we order the trial court to issue a corrected abstract of judgment that reflects the oral pronouncement reserving jurisdiction for purposes of victim restitution. We deem the abstract, so corrected, to prevail over any contrary statement in the reporter's transcript. (See *People v. Thompson* (2009) 180 Cal.App.4th 974, 978.) The erroneous local sentence and eight-month concurrent term in the reporter's transcript are of no effect.

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment showing that the trial court reserved jurisdiction to award victim restitution. The court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


        /s/
        MESIWALA, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
ROBIE, J.


15